## UNITED STATES v. CRADDOCK–TERRY SHOE CORPORATION.

### Civ. A. No. 195.

United States District Court
W. D. Virginia. Lynchburg Division.
May 25, 1949.

Beverley R. Worrell, Regional Attorney, Department of Labor, Birmingham, Ala., for plaintiff.

Frank G. Davidson, Jr., Lynchburg, Va., for defendant.

PAUL, Chief Judge.

In this action the United States seeks to recover from the defendant the sum of $8,090.00 as liquidated damages for the alleged breach of certain conditions and stipulations in contracts entered into between the parties governed by the provisions of the Act of Congress of June 30, 1936, known as the Public Contracts Act and frequently referred to as the Walsh-Healey Act, 41 U.S.C.A. §§ 35–45.

The provisions of this statute, so far as pertinent here, are to the effect that in any contract entered into by the United States for the manufacture or furnishing of supplies or materials in any amount ex-

ceeding $10,000.00 there shall be included certain conditions and stipulations which the contractor shall bind himself to observe in performance of the contract. Among these are conditions relating to the minimum wages to be paid to and the hours of work required of employees. Among the further conditions is one providing that no male person under sixteen years of age will be employed by the contractor in the manufacture or production of any of the materials, supplies, articles or equipment contracted for. It is this last named provision which is involved in this action.

The statute further provides, Walsh-Healey Act, § 2, 41 U.S.C.A. § 36, that for any breach of the stipulation relating to the employment of males under sixteen years of age the persons responsible therefor shall be liable to the United States for liquidated damages in the sum of $10 per day for each such person knowingly employed in performance of the contract.

The Act, § 4, 41 U.S.C.A. § 38, further authorizes the Secretary of Labor to administer the foregoing provisions and to prescribe rules and regulations therefor. And it is further provided, § 5, 41 U.S.C.A. § 39, that upon any complaint of a violation of the Act, the Secretary, or an impartial representative designated by him, shall have power to hold hearings with respect to the alleged violations, and to make findings of fact thereon, which findings, if supported by the preponderance of the evidence, shall be conclusive in any court of the United States. The Secretary, or his representative, is also authorized to make such decisions, based on his findings, as are necessary to enforce the provisions of the Act.

The defendant, Craddock-Terry Shoe Corporation, is engaged in the manufacture of shoes and during the years 1942, 1943 and 1944 entered into fifteen contracts with the United States to supply the latter with shoes. There appears no dispute of the fact that all of these contracts were subject to the provisions of the Walsh-Healey Act. It is stated by defendant that all of the contracts were completed prior to September 26, 1944, with the exception of two; and that of these two, one was entered into on July 31, 1944, and completed about March 28, 1945, while the other was entered into August 31, 1944, and completed on or before January 2, 1945.

On September 24, 1946, the Secretary of Labor issued a complaint that in the performance of the contracts referred to the defendant had knowingly employed 25 minors under the age of sixteen years for a total of 2305 days, and that by reason thereof the defendant was liable to the United States in an amount of $10.00 for each of such days. This complaint was directed at the defendant corporation and at its Director of Personnel, Tucker Thurmond. Pursuant to the Act and with the prescribed procedure a trial examiner was appointed to hold hearings on this complaint and to report findings and recommendations thereon.

After notice to parties in interest a hearing was held, at which evidence as to the alleged violations was taken, and on February 17, 1947, the examiner reported his findings and recommendations. In this report he found that the evidence was insufficient to sustain the charges of violation of the Act as to 20 of the alleged minors; but found that the charges were sustained as to 5 of them, for a total of 811 days; the names of these employees and the days worked by each being as follows:

| | | |
|---|---|---|
| Laymond E. McFaden | 38 | days |
| Preston C. Lloyd | 44 | " |
| David E. Hurt | 16 | " |
| Aurbon H. Wilson | 331 | " |
| James C. Rice | 382 | " |
| Total | 811 | |

The examiner recommended that the Government collect from the Craddock-Terry Company the sum of $8,110.00 ($10 for each day of the aggregate employment of the named employees) and that the complaint be dismissed as to Thurmond, the Personnel Director. Exceptions to the report were taken by the defendant corporation and upon consideration of these the Administrator of the Wage and Hour and Public Contracts Divisions of the Department of Labor sustained the examiner's report, with the exception that he found an error of 1 day each in the computation of the number of days charged to two of the employees, resulting in a

reduction to 809 of the total days for which liability is asserted. The Craddock-Terry Company petitioned for review of the Administrator's decision by the Secretary of Labor and upon this review the Secretary, in a decision dated April 7, 1948, affirmed the Administrator's order holding the defendant liable in the amount of $8,090.00. The defendant refused to pay the sum adjudged and this action has been brought to enforce the liability.

The defendant does not deny that the employees as to whom this liability is asserted were under the age of 16 when employed, but denies that it had knowledge of this fact at the time of or during the period of their employment. Its exceptions to the examiner's report and its appeal to the Secretary of Labor were based on this question of knowledge.

In its answer in this action the defendant asserts in its defense (1) That the finding that it knowingly employed persons under 16 years of age is not supported by a preponderance of the evidence but, on the contrary, it is without any substantial support in the evidence. It also (2) pleads the statute of limitations; and (3) asserts that the liability asserted against it is in reality a penalty which should not be enforced. The answer demands a jury trial of all issues involved in the case, "triable of right by a jury".

The plaintiff has moved for summary judgment on the pleadings, supported by the record of the administrative proceedings in the Department of Labor. The defendant has not suggested that there are any further issues of fact to be tried by a jury or otherwise and, so I understand, raises no question of the propriety of determining the case on the motion for summary judgment. Undoubtedly this is the appropriate procedure since the questions involved are solely for determination by the court. In its briefs and oral argument defendant has not pressed any contention that the recovery sought is for a penalty but has submitted its case on the two propositions: (1) That the action is barred by the limitations contained in the act of May 14, 1947, known as the Portal-to-Portal Act, 29 U.S.C.A. §§ 251–262; (2) That the finding that the defendant knowingly employed persons under 16 years of age is not supported by the evidence or by the preponderance of it.

### The Statute of Limitations

The Portal-to-Portal Act, approved May 14, 1947, 29 U.S.C.A. §§ 251–262, provides, § 6:

"Sec. 6. Statute of limitations. Any action commenced on or after the date of the enactment of this Act to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

"(a) if the cause of action accrues on or after the date of the enactment of this Act—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued;

"(b) if the cause of action accrued prior to the date of the enactment of this Act—may be commenced within whichever of the following periods is the shorter: (1) two years after the cause of action accrued, or (2) the period prescribed by the applicable State statute of limitations; and, except as provided in paragraph (c), every such action shall be forever barred unless commenced within the shorter of such two periods;

"(c) if the cause of action accrued prior to the date of the enactment of this Act, the action shall not be barred by paragraph (b) if it is commenced within one hundred and twenty days after the date of the enactment of this Act unless at the time commenced it is barred by an applicable State statute of limitations."

The plaintiff first urges that the limitation of actions prescribed in this statute does not apply to the instant case. This argument is based on the general rule that limitations do not run against the Government unless the statute imposing them clearly indicates the intention that they so apply. I cannot accept the argument as applying here for the reason that the statute, as I read it, seems clearly to apply its limitations to the Government

in actions of this sort. The limitation specifically applies to, among others, "Any action * * * for * * * liquidated damages * * * under * * * the Walsh-Healey Act * * *." Under the terms of the Walsh-Healey Act, the liability for liquidated damages is to the United States only. A violator of the Act, § 2, is not made responsible in damages to any individual, but only to the United States. 41 U.S.C.A. § 36. The United States alone has a right of action to collect such damages, and if the limitation imposed on actions "for * * * liquidated damages * * * under * * * the Walsh-Healey Act" does not apply to the Government there is no one to whom it would apply.

The real question here involving the limitation on the action is as to when the cause of action accrued. The latest date on which any of these minors was employed was December 9, 1944. The complaint of violation was issued September 24, 1946; the administrative proceedings were ended with the decision of the Secretary of Labor on April 7, 1948, that the violations had occurred and adjudging liability against the defendant; this action to enforce the liability was instituted June 22, 1948.

It is the contention of defendant that the cause of action accrued at the time when the minors were employed—when the violation occurred; and that, therefore, the action is barred by that provision of the Portal-to-Portal Act, § 6 (b), which limits the right of action to two years after the cause of action accrued or to the period prescribed by the applicable State statute of limitations, whichever is the shorter. Any state statute would appear of no materiality here, inasmuch as it appears that this suit was not instituted until more than two years after the last violation alleged. If we were to consider that the act of issuing the complaint (September 24, 1946) was to be taken as the commencement of the action to enforce the liability, then the provisions of the Portal-to-Portal Act would not apply inasmuch as it deals only with actions instituted after the date of its enactment, May 14, 1947. However, neither of the litigants have urged this interpretation of the language of the Portal-to-Portal Act, § 6, and apparently acquiesce in the view that the terms "Any action commenced * * *," used therein, refers to an action brought in court to enforce the liability.

Inasmuch as the Portal-to-Portal Act does not attempt to define when a cause of action under the Walsh-Healey Act is deemed to have accrued, we must examine the latter act for an answer. The question does not permit of an easy or off-hand solution. A search of the decisions for a clear and unvarying definition of the term "cause of action" meets with confusion. Some of the cases state it to be equivalent to or synonymous with "right of action"; others draw a distinction between the two. It has been both asserted and denied that the "cause of action" is the same thing as the "subject-matter of controversy". See 6 Words and Phrases, Perm.Ed., page 355 where the term is variously defined. Perhaps as good a definition as any is that quoted in Billing v. Gilmer, 5 Cir., 60 F. 332, 334, to the effect that "A cause of action is the existence of those facts which give a party a right to judicial interference in his behalf."

The defendant argues that the right of the Government to bring an action of this nature arose when the minors were employed and that the period of limitation runs from the dates of such employment. It is urged that a determination by the Secretary of Labor that minors were knowingly employed is not a prerequisite to exercising the right to sue for damages; that the right so to sue is not conditioned on a prior finding that breach of the contract has occurred. The implication is that the Government, acting merely on a complaint and without any investigation into the facts, may bring its suit for liquidated damages, leaving the whole matter of whether there has been a violation and the extent of it, if any, to be threshed out in a trial in the district court. The further implication is that the hearing ordered by the Secretary, with its consequent report and findings, was merely a gratuitous act on the part of the Secretary and one not required. While it is true that there is no specific prohibition against bringing a suit of the instant nature until after a hearing

is held, it is certain that the procedure which defendant suggests is not contemplated by the statute.

The practice of having a hearing on complaints of violation with a report and findings of fact is not something that originated in the mind of the Secretary of Labor or in a mere rule of the Labor Department. The statute itself, Walsh-Healey Act, § 5, 41 U.S.C.A. § 39, provides for such hearings and directs that findings of fact be made as the result of such hearings. And it further provides that such "findings shall be conclusive upon all agencies of the United States, and if supported by the preponderance of the evidence, shall be conclusive in any court of the United States; and the Secretary of Labor or [his] authorized representative shall have the power, and is hereby authorized, to make such decisions, based upon findings of fact, as are deemed to be necessary to enforce the provisions of this Act". 49 Stat. 2038.

Matters of significance in the above provisions of the statute are (1) that findings of fact made as a result of the hearings are conclusive upon all agencies of the United States; (2) that such findings, if supported by the preponderance of the evidence, are conclusive in any court of the United States; (3) that the Secretary of Labor shall make such decisions, based on these findings, as are necessary to enforce the provisions of the Act. The hearings before the Department of Labor are for the purposes and are invested with the results enumerated. None of these would be accomplished without such hearings. There would be no findings conclusive on all agencies of the United States. No suit of the sort contemplated in the statute could be brought, namely, one into which the Government entered with a favorable presumption based upon findings of fact. And no decision by the Secretary necessary, or even helpful, to enforcement of the act would have been made.

It is to be remembered that the liability for liquidated damages is to the United States alone and only the United States can enforce their collection. It seems the plain intendment of the statute that administrative proceedings, consisting of the hear-ing, the findings of fact, and the decision of the Secretary, shall be the process whereby the Secretary determines whether the United States has a claim and the amount of it; and only when this has been determined and the contractor has refused payment, is resort to be had to the courts. The administrative proceedings appear to be a prerequisite to an assertion of the claim for damages; and it would appear that not until the conclusion of these proceedings with the Secretary's decision does the Government have a right of action in the courts for collection of the damages. I am, therefore, compelled to the conclusion that in applying to actions of the instant sort the two-year limitation prescribed by the Portal-to-Portal Act, the time when the limitation begins to run is the date of the Secretary's decision asserting the claim for damages. In this instance the action in court was instituted within three months thereafter and is, therefore, not barred.

### The Findings that the Minors were Knowingly Employed

The examiner found that five minors had been knowingly employed, the names of these and the times of their employment having heretofore been set out. These findings (with insignificant changes) were, after hearing exceptions thereto, approved by the Administrator; and upon a petition for review, were affirmed by the Secretary of Labor. The statute provides that such findings, if supported by the preponderance of the evidence, shall be conclusive in any court of the United States.

The findings of the examiner are not based on proof that the defendant had actual and affirmative knowledge that these employees were under 16 years of age. His report, in fact, impliedly absolves it of such knowledge. He concluded, however, that the defendant made no real effort to ascertain the employee's ages; that it avoided making inquiries which would have disclosed that they were under age; and that it ignored and failed to make any investigation of facts and circumstances which were such as to put it on notice that the employees were under sixteen. In other words, the examiner found that while each of these boys at the time of employ-

ment, stated his age as over sixteen, there were various circumstances which should have caused, and did cause, the defendant to suspect these statements to be untrue; and that defendant, thus put on notice, avoided making any further inquiry which would have disclosed the truth. The examiner terms this to be "constructive" knowledge. In order to determine whether the examiner's findings are supported by the preponderance of the evidence a consideration of the whole evidence before him is required. An examination of the evidence disclosed by the record, which in some respects seems rather indefinite and incomplete, discloses substantially the following facts:

During the years 1942, 1943 and 1944 the normal pay roll of the defendant was approximately 3,000 persons. During these years, respectively, the number of persons who left the employment of the defendant was in 1942, 1725, in 1943, 2858, and in 1944, 2101, these figures being approximate. It is evident that this large turnover in employees required the regular and continuous hiring of new employees.

It appears that during these years hiring was not done through any central office, but that applications for employment were made to and considered by foremen of the different divisions of the company and that employments of the applicants were made by these foremen or upon their recommendation. It may be noted that following a visit of an inspector from the Labor Department late in the year 1944, and upon his recommendation, all employment, beginning in the spring of 1945, was made through the personnel office. However, this latter was not the practice during the period of the employments in question in this case.

From the testimony of the various foremen, and others, who were connected with approval and taking on applicants for employment, it appears that all of these foremen had knowledge that no persons under 16 years of age were to be employed and that they had all received instructions to this effect from higher authority in the corporation. It further appears that the general practice was that applicants for employment were all questioned as to their ages and that in making out what is referred to as an "employment slip", which was signed by the applicant, the age of the employee was entered along with other information furnished by the applicant.

If the applicant stated his age as over 16 and no reason appeared for questioning the truth of this statement, the applicant was generally employed without further proof of age. If on interviewing the applicant there was reason to suspect that he might be under 16 because of his appearance, or for other reasons, the applicant was asked to furnish proof of his age in such form as a birth certificate, a record of his family Bible, statement from his parents or other people who knew his age or some other manner which the employer deemed satisfactory. If the applicant admitted to being under 16 years of age, he was refused employment and it appears that on some occasions where the employment had been granted in the belief that the applicant was over 16, he was later discharged from employment when it came to the knowledge of the defendant that he was under that age when employed. I think the evidence sufficiently establishes that no persons under 16 years of age were employed when the defendant had affirmative knowledge that they were under age.

Coming to the individual employees involved in this case, the testimony taken before the examiner shows the following:

### Laymond E. McFaden

This employee, who was introduced as a witness by the government, testified that prior to going to work for the defendant he had been in first year of high school; that when he applied for employment to the defendant he was not asked for a birth certificate nor other proof of his age and was not questioned about his age. He filled out an employment slip, in which he stated that he was 16 and that the date of his birth was April 11, 1927. He testified before the examiner that the correct date of his birth was April 11, 1928.

On behalf of the defendant, Mr. Chenault, a foreman, testified that when McFaden applied for employment he asked him his age and was told by McFaden that he was over 16; that McFaden was a

large boy about 5 feet 8 inches or 10 inches in height and weighing about 150 or 155 pounds, and that he, Chenault, had have taken him to be 17 or 18 years old; that he accepted McFaden's statement that he was over 16 and required no further proof of age. Another foreman, Mr. Thacker, under whom McFaden worked after his employment, verified the testimony of Mr. Chenault as to the physical appearance of McFaden in regard to height and weight and as to his apparent age. He also stated that McFaden's appearance at the time of the hearing was about the same as when the latter was employed. Mr. Currier, who had been production manager at the time of McFaden's employment also verified the testimony of other witnesses as to his physical appearance and stated that there was nothing in his appearance to lead him to the belief that McFaden was under 16 at the time of his employment.

### Preston C. Lloyd

This employee was introduced as a witness by the government and testified that he was first introduced to Mr. Holt, Superintendent of the West-End factory, and then went to see Mr. Maddox, one of the foremen in that factory; that he was asked whether he was 16 years of age and that he had stated that he was. When asked at the hearing if this statement was true, the witness replied that he did not know whether it was true or not but that his birthday was September 10, 1927. He further testified that he was asked if he had a birth certificate, but that he was unable to procure one due to some mixup about the name in which his birth had been registered and that the defendant did not press the matter of a birth certificate.

For the defendant, Mr. Maddox, the foreman who employed Lloyd, testified that the employee was brought to Mr. Holt's office by a brother, Kenneth Lloyd, who worked at the factory and that he, Maddox, and Mr. Holt, interviewed Preston Lloyd in Mr. Holt's office. That Preston Lloyd and Kenneth Lloyd both gave the assurance that Preston was 16 years of age; that in view of this assurance from both the employee and his brother he had no reason to question its truth; that Preston was small in size, about 5 feet 6 inches tall, weighing about 130 pounds, but that all of Lloyd's family were small people and because of this he attributed no significance to the size of the applicant.

The employee's brother, Kenneth Lloyd, testifying for the defendant, stated that he told Mr. Holt that Preston was 16 years of age and that while he himself did not know Preston's birth date, he had asked their mother as to Preston's age and had been told that he was 16 and that he had made a statement to that effect to Mr. Holt and Mr. Maddox in good faith and in belief in its truthfulness.

### David E. Hurt

This employee, who testified for the government, stated that he applied to Mr. Thurmond, the personnel director of the defendant for a job. That he knew that he had to be over 16 before he could get work with the defendant and that he stated to Mr. Thurmond that he was 16 and that he was born in June, 1927. That Mr. Thurmond told him to procure a birth certificate in case he might want to see it and that he, Hurt, told him that he had a birth certificate at home in case it was required. That Mr. Thurmond, however, did not require him to produce the certificate and that he went to work without producing it. He further testified that his statement to Mr. Thurmond as to his birth date was not true.

For the defendant, Mr. Maddox, a foreman under whom Hurt worked, testified that Hurt's father, who was an old and trusted employee, first approached him saying that the boy had quit school and wanting to know if he could get a job with the defendant. That he, Maddox, asked about the boy's age and was told that he was 16 and he thereupon told the father to send the boy to Mr. Thurmond's office for an interview. That a few days later David Hurt reported and, in response to questioning by Mr. Holt and Mr. Maddox, he stated that he was 16 years of age. That the applicant was about 5 feet 6 inches in height and weighed about 130 or 135 pounds; that he did not have the appearance of being under 16 years of age and that he, Maddox, accepted the applicant's

statement as to his age in good faith and particularly that he accepted the statement of the father, who was a trusted employee of long service.

## James C. Rice, Jr.

This employee testified for the government, stating that he first talked with Mr. Holt, Superintendent of the West-End plant; that he was questioned about his age and in response thereto stated that he was over 16, having been born in June, 1926. That this statement was untrue and that he had made it because he wanted a job. That he was asked to present a birth certificate, but that he did not do so. That this request was repeated several times during his employment, but that he never produced the certificate. That he signed a statement at the time of his employment in which he had given his age as over 16.

Mr. Holt, for the defense, testified, that a man named Whorley, who had been an employee of the defendant for 26 years, had approached him to find out if the defendant could use any more men and, on being told that it could, Mr. Whorley, a few days later, brought James Rice to his office. That he, Holt, asked Whorley if he knew anything about the boy and was told that the boy had been working for the Postal Telegraph Company; that Whorley's wife was a bookkeeper at the Postal Telegraph and knew the boy and knew that he was 16 and had asked him, Whorley, to help the boy get a better job. That at the time of Rice's employment he was a large boy, weighing about 170 or 175 pounds, and was about 5 feet 7 inches tall and that he appeared to be over 16.

Mr. Whorley, who had brought Rice to the factory for employment, testified that his wife was bookkeeper at the Postal Telegraph and that she had informed him of this boy, Rice, who wanted to get a better job, and had asked him to try to get him on with the defendant. That his wife had told him that the boy was over 16, as shown by the records at the Postal Telegraph, and where he had given his age as 16. Mr. Whorley further testified, in confirmation of Mr. Holt, as to the size and physical appearance of Rice and stated that he would have taken him to be 17 or 18 years old.

A Mr. Baker, who had worked on the floor close to Rice, also verified the other testimony as to Rice's size and physical appearance and stated that there was nothing to indicate that he might be under 16.

A Mr. Brooks, who also worked with Rice, verified the other testimony as to his size, weight and general physical appearance, and stated that he appeared to be 17 or 18 years of age.

## Aurbon H. Wilson

The evidence regarding this employee is somewhat confusing. According to his testimony he worked for the defendant at two different periods, but the times of these two different employments are not definitely stated. He says that on one occasion after he had been employed and had worked for some time, his foreman, Madren, discovered that he was not 16 years old (as he had stated at the time of his employment) and discharged him because of his age. Apparently this referred to his first employment; and the second period of employment was at a later time when he had become over 16. Also it is to be gathered from his evidence that the employment under investigation here, beginning August 23, 1943, was the first of the two periods of employment.

As to the conditions surrounding this employment (August, 1943) this employee testified that before being employed he was interviewed by Mr. Madren, a foreman, and the superintendent (Mr. Holt); that he was asked as to his age and told them he was 16; and that he signed an employment slip in which he stated that he was over 16. That he was not asked for a birth certificate and did not produce one. That sometime later Mr. Madren found out that he was under 16 and let him go.

For the defendant it was testified by Mr. Holt and by Mr. Madren that Wilson was brought in by a man named Vearl Grogan, who was an employee of defendant and who stated that Wilson was his brother-in-law and would like to get a job; that

Wilson was interviewed in the presence of both Holt and Madren and told them that he was over 16. And that Grogan also, when he first approached Mr. Madren about getting a job for Wilson, had been asked as to Wilson's age and had stated that he was over 16. Mr. Holt and Mr. Madren both testified that Wilson was rather young-looking, slim and small-featured but that they had no reason to believe that he was lying about his age nor to suspect that Grogan, whom they considered reliable, would do so.

A confusing factor in respect to this employee is the introduction in evidence at the hearing of a birth certificate which has apparently been altered at some time so as to indicate a birth date of June 14, 1927. Apparently the original date in this certificate was June 14, 1928, and the examiner so assumed in his report. But assuming this to be correct I am unable to see any bearing it has on the questioned employment, nor how or why it was presented in evidence. Wilson himself testified that when first employed he was not asked to produce a birth certificate and that he never produced or offered one at that time or at any time during that employment, which terminated with his discharge when his true age was discovered. Asked the question, "At what time did you take this certificate?", he stated "The second time I went to work". This answer still leaves it in question as to whether he ever presented the certificate to defendant, but this seems of no moment, for, while not clearly shown, the inference from the evidence is that his second employment was after he had actually reached the age of 16. This second employment is not involved here, and clearly the certificate had no connection with the employment which is under investigation.

Unless the court is in grave error in its understanding of the evidence as to this employee, it is clear that the examiner was. In that part of his report dealing with Wilson he states:

"When questioned he also misrepresented his age to obtain the job. He was required to and produced a birth certificate which obviously had been tampered with falsely to show that he was born in 1927 instead of 1928. There were, therefore, two reasons for questioning his reported age, his youthful appearance and the altered birth certificate. Respondents were grossly negligent in ignoring both of them."

So far as relates to the birth certificate the above finding is not in accordance with the evidence. There is no evidence whatever that the defendant required or asked for Wilson's birth certificate, or that it ever saw it. The evidence is directly the contrary. The employee himself, the only witness on the subject, says specifically that he was never asked for a birth certificate and that at no time prior to or during the period of the employment in question did he ever exhibit any such certificate to the defendant.

It may here be noted that the examiner apparently fell into another error in his finding as to this employee, Wilson. The period of Wilson's employment was stipulated to be between August 23, 1943, and December 9, 1944, during which, it was stipulated, he worked 331 days. The examiner found the defendant liable for all of these. However, if Wilson's true date of birth was June 14, 1928, as shown by the birth certificate before its attempted alteration, then he would have become 16 years old on June 14, 1944, and no time following this date should be included in the period of unlawful employment.

It is evident that in arriving at his conclusions the trial examiner relied largely upon his own observation of these minors made when they appeared before him at the hearing. This hearing was held on November 4, 1946. The employment of these boys had begun at times ranging from a little less than 2 years to over 3 years before the hearing. The examiner says in his report:

"I observe that McFaden, Lloyd, Hurt and Wilson were of such youthful appearance even at the time of the hearing as to require some independent corroboration for any statement that they were 16 years old. It seems entirely reasonable to assume that they looked even younger

when they were employed several years before."

Throughout his report the examiner emphasizes the youthful appearance of these employees as he observed it at the hearing and the extent to which his conclusions rested on this evidence. It is not too much to say that the report clearly indicates that it was this visual observation which furnished the weight of evidence against the defendant. In this situation there is obvious the difficulty—not to say impossibility—of the task now presented to this court. The court is required to uphold the administrative findings if they are supported by "the preponderance of the evidence." But the court has never seen any of these employees; it has had no opportunity to judge of their appearance. The result is that the court is called on to evaluate the evidence on which the plaintiff most strongly relies, namely, the examiner's visual observation, without having that evidence presented to it. It is called on to determine the weight to be given to evidence which has never been before it.

What the court has before it in this respect is the statement of the examiner that in his opinion the physical appearance of these boys was such as to put the defendant on notice that they were under age. This is his opinion only and whether it is well founded the court has no means of judging. It is common knowledge that persons may differ sharply in estimating the ages of others, when appearance is the only basis of estimate. What we have here is the opinion of one man resting on this uncertain basis and relayed to the court as evidence; and, as before stated, the primary evidence on which the examiner's conclusions were based. Aside from this there is not much in the record to sustain the findings.

If the court were compelled to adopt the opinion which the examiner formed from his observation of these employees and give to it such weight as to make it preponderate as against all contrary evidence, there would be practically no latitude for the exercise of the court's judgment on the question before it. It would be foreclosed in any case in which the examiner expressed the opinion that the appearance of the employees showed them to be under age—an opinion which the court would have no opportunity to corroborate.

The issue here is whether the defendant, when it employed these boys, had knowledge that they were under age. It may be readily conceded that a mere denial of such knowledge would not suffice to absolve the employer in such cases as this. If there existed facts and circumstances which should have impressed the employer with knowledge or should have aroused sound reasons for doubt which dictated further inquiry he could not ignore these and take refuge in the excuse that he did not *know*. Nor would the practice of lightly accepting the statements of employees themselves as to their ages, without firmer proof, seem a sound one for an employer who was careful to observe the law. But the statute does not prescribe methods or formalities which the employer must use to insure that he will hire only those of the permitted age. It provides only that he shall not *knowingly* hire anyone under age. Neither is the employer, when faced with a complaint, compelled to shoulder the burden of proving that he is not guilty. The burden is upon the plaintiff to show by a preponderance of the evidence that the employer has *knowingly* engaged in the unlawful hiring.

There is credible evidence in this case that the defendant had a fixed practice of inquiring as to the ages of all youthful applicants for employment and causing them to sign forms in which their ages were stated. That this practice was followed in each of the cases in question and that in each of them the employee stated that he was over 16. In four of the cases these statements as to age were supported by other persons who were seemingly in position to know of what they spoke and in whose truthfulness the defendant had confidence. There is testimony not denied that on several occasions, including one now in question, the defendant, after receiving information that the employees were in fact under age, investigated such cases and discharged the employee when

this was found to be true. This would indicate a good faith intention not to employ persons under 16; and to deny the knowing employment of such persons.

While under the pressure of completing its contracts with the Government the defendant was experiencing a very large turnover of its labor. This was probably due in large measure to the fact that its younger employees were constantly being drafted for military service and had to be replaced. Under these conditions the defendant failed to exercise the more diligent and extended investigation as to the age of the applicants for employments that might seem proper under more normal circumstances. But even so upon consideration of all the evidence I am of opinion that the findings of the trial examiner, approved by the Secretary of Labor, to the effect that the defendant knowingly employed persons under 16 years of age is not supported by the preponderance of the evidence and that this action based on those findings must fail, with judgment for the defendant.