**UNITED STATES v. SWEET BRIAR,**
Inc., et al.

Civ. A. No. 1063.

United States District Court
W. D. South Carolina, Greenwood Division.

Sept. 16, 1950.

Oscar H. Doyle, U. S. Atty., Greenville, S. C., Walter H. Hood, Asst. U. S. Atty., Greenville, S. C., for plaintiff.

Nicholson & Nicholson, Greenwood, S. C., for defendants.

WYCHE, Chief Judge.

On May 16, 1950, the United States of America filed its complaint under section 2 of the Walsh-Healey Public Contracts Act, 49 Stat. 2036, 41 U.S.C.A. § 35 et seq., hereinafter called the Act, to recover of the defendants liquidated damages as determined and found to be due it in an earlier

administrative proceeding conducted under section 5 of the same Act. The complaint alleges that the Secretary of Labor on January 9, 1947, issued a complaint under section 5 of the Act, charging, among other things, that in the performance of eleven specified Government contracts subject to the Act the defendants breached the contracts and violated the Act by knowingly employing under-age minors, and that by reason thereof the defendants were indebted to the United States of America in the sum of $10.00 for each day that each under-age minor was so employed. The complaint further alleges the salient steps which thereafter occurred in the administrative proceeding, such as the appointment of a trial examiner, the holding of a hearing after notice, the filing of the trial examiner's report and the subsequent decision by the Administrator on the defendants' petition for review, in which it was found and determined that the defendants were subject to the Act and that the defendants, Sweet Briar, Inc., and Al Greenfield, jointly with Catherine and Jacob Greenfield, both now deceased, were indebted to the United States of America in the sum of $1,270.00, and that the defendants, Sweet Briar, Inc., and James Greenfield, were indebted to the United States of America in the sum of $460.00, both of said amounts being liquidated damages for the knowing employment of under-age minors for 1927 and 46 days, respectively. Plaintiff now seeks judgment for said amounts.

On May 31, 1950, the defendants filed their answer, in which, as their main defense, they assert that the administrative findings are arbitrary and unsupported by the facts or the law.

On July 3, 1950, the United States filed its motion for summary judgment, pursuant to Rule 56, Rules of Civil Procedure, 28 U.S.C.A., on the ground that there is no genuine issue as to any material fact, and that the plaintiff is entitled to judgment as a matter of law.

On July 20, 1950, oral argument was had on the motion for summary judgment, during which the defendants acknowledged the propriety of the motion and further acknowledged that the only question on the motion is whether the administrative findings are supported by a preponderance of the evidence. That question has since been narrowed by the defendants' statement, in the form of a letter from their counsel to me dated July 28, 1950, that they will not contest the administrative finding that they are subject to the Act.

The main issue is whether the administrative findings that the defendants knowingly employed under-age children are supported by a preponderance of the evidence. The Walsh-Healey Public Contracts Act was enacted in 1936 "to provide conditions for the purchase of supplies and the making of contracts by the United States." Title to Act. Its purpose is "to use the leverage of the Government's immense purchasing power to raise labor standards." Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 507, 63 S.Ct. 339, 342, 87 L.Ed. 424. It provides that contracts with the Government for the "manufacture or furnishing of materials, supplies, articles, and equipment in any amount exceeding $10,-000" shall contain representations and stipulations, *inter alia,* "that * * * no female person under eighteen years of age * * * will be employed by the contractor in the manufacture or production or furnishing of any of the materials, supplies, articles, or equipment included in such contract". Section 1(d). It further provides that any breach or violation thereof shall "render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of such contract, the sum of $10 per day for * * * each female person under eighteen years of age * * * knowingly employed in the performance of such contract". Section 2.

On November 11, 1942, the Secretary of Labor, pursuant to the authority of section 6 of the Act, issued an exemption order which permitted the employment of sixteen and seventeen year old girls, but only under the following conditions: (1) That no girl under 16 years of age shall be employed. (2) That no girl under 18 years of age shall be employed for more than 8 hours in any one day, or between the hours

of 10 p. m. and 6 a. m., or in any way contrary to State laws governing hours of work. (This condition was subsequently relaxed to permit the employment of girls up to 9 hours a day.) (3) That no girl under 18 years of age shall be employed in any operation or occupation which, under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., or under any State or administrative ruling, is determined to be hazardous in nature or dangerous to health. (4) That for every girl under the age of 18 years employed by him the contractor shall obtain and keep on file a certificate of age showing that the girl is at least 16 years of age. (5) That a specific and definite luncheon period of at least 30 minutes be regularly granted any women workers under 18 years of age. (6) That no girl under 18 shall be employed at less than the minimum hourly rate set by or under the Fair Labor Standards Act or the Walsh-Healey Public Contracts Act for the industry in which the exemption is granted.

This exemption order was in effect during the period involved in this proceeding.

■ The Secretary of Labor is directed "to administer the provisions of this Act" and empowered to "make investigations and findings as herein provided, and prosecute any inquiry necessary to his functions", Section 4, and that he may better and the more fairly discharge his functions, Endicott Johnson Corp. v. Perkins, supra, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, he is authorized to hold hearings "on complaint of a breach or violation of any representation or stipulation" and "to issue orders requiring the attendance and testimony of witnesses and the production of evidence under oath." Section 5.

In such proceedings the Secretary "shall make findings of fact after notice of hearing, which findings shall be conclusive upon all agencies of the United States, and if supported by the preponderance of the evidence, shall be conclusive in any court of the United States". Section 5. Such findings are to be enforced in suits "brought in the name of the United States of America by the Attorney General thereof." Section 2.

The findings are presumptively correct, and the burden is upon the defendants to show that they are not supported by the evidence. United States v. Hudgins-Dize Co., D.C.E.D.Va., 83 F.Supp. 593, 596.

Considering the evidence and findings relating to the employment of two fifteen year old girls, Ellen Price and Mary Lou Oswald, for 105 and 22 days, respectively, it appears that the correct ages of these girls were established by duly authenticated birth certificates. The days worked by each girl in covered operations were established by transcriptions of the company's payroll records. Therefore, the only question is whether the girls were "knowingly" employed, within the meaning of the Act.

■ The liquidated damages imposed by the Act upon a contractor for knowingly employing under-age persons is not a penalty or forfeiture. United States v. Harp, D.C., 80 F.Supp. 236, affirmed 10 Cir., 173 F.2d 761. The term "knowingly", as used in the Act, does not have any meaning of bad faith or evil purpose or criminal intent. Its meaning is rather that used in contract law, where it means knowing or having reason to know. A person has reason to know when he has such information as would lead a person exercising reasonable care to acquire knowledge of the fact in question or to infer its existence. And this is the construction the courts have followed in actions brought under the Act. United States v. Craddock-Terry Shoe Corporation, D.C., W.D.Va., 84 F.Supp. 842, affirmed 4 Cir., 178 F.2d 760.

The exemption order of November 11, 1942, permitting the employment of sixteen and seventeen year old girls under the conditions therein prescribed, has no application to the employment of Ellen Price and Mary Lou Oswald since both of them were under the qualifying age of sixteen years. Cf. United States v. Harp, supra, D.C., 80 F.Supp. 236, affirmed 10 Cir., 173 F.2d 761. Therefore, in deciding the question presented here only section 1(d) of the Act will be considered.

■ It is not disputed that at the time of being hired by the company's supervisor, Mary Campbell, both girls represented

themselves to be sixteen years of age. The claimed ages, although incorrect, were nevertheless notice of the fact that the girls were under eighteen years of age, the minimum prescribed by section 1(d) for the employment of girls. I cannot agree that notice that the girls were under sixteen years of age was communicated to the defendants by the physical appearance of the girls. I do not believe that anyone can, with any degree of accuracy, determine the age of girls by their appearance, certainly, not to such an extent as to be held liable for "knowing" their ages. In United States v. Craddock-Terry Shoe Corporation, supra, D.C., 84 F.Supp. 842, 851, it is stated, "It is common knowledge that persons may differ sharply in estimating the ages of others, when appearance is the only basis of estimate." I cannot, therefore, say that the defendants employed these girls "knowing" that they were under sixteen years of age, especially since, when they were employed, they informed the employer that they had been employed in other similar work at Saluda, South Carolina. However, the defendants were not permitted to employ girls under eighteen years of age, unless they complied with certain conditions, one of which was "that for every girl under the age of 18 years employed by him the contractor shall obtain and keep on file a certificate of age showing that the girl is at least 16 years of age." The defendants failed to comply with this condition. Having violated the exemption order, it became inoperative as to these girls, and the defendants thereby forfeited the right to their employment until they reached their eighteenth birthday. Full compliance with the order is a condition of employment, and not a mere privilege to be exercised in the discretion of the employer. For these reasons, I must sustain the administrative findings, except as herein modified.

■ The evidence discloses that Dorothy Mae Bedenbaugh, Doris Davenport, Dorothy Mae Waters, Christine Wilson and Lillie Mae Woodward, were all between the ages of sixteen and eighteen years of age and were employed at Newberry Manufacturing Company. The ages of these girls were established by the introduction of duly authenticated birth certificates, and days and hours of work in the performance of the contracts were established by the company's payroll records. All five girls correctly stated their ages at the time of being hired. Upon being employed each of these girls was required to, and did, furnish a birth certificate, and the certificates showed on their face that all five of the girls in question were over sixteen, but under eighteen years of age. Since the girls in this group were admittedly sixteen and seventeen years old, the only question to be decided is whether they were employed in accordance with the conditions of the Secretary's exemption order. Defendants had knowledge of the six conditions of the exemption order. A typewritten notice of the order was posted on the bulletin board or wall at the Newberry plant. Condition No. 2 stipulated, among other things, that no sixteen or seventeen year old girl was to be employed in excess of eight hours a day. This condition was subsequently relaxed to permit the employment of girls up to nine hours a day. According to the company's payroll records, the five girls in question were permitted to, and did, work on each of 46 days more than nine hours a day. An employer is chargeable with knowledge of all information entered on his records in the regular course of his business. Therefore, I must sustain the administrative findings that the girls in question were permitted to and did work on each of the 46 days more than nine hours per day.

After having read briefs submitted by counsel for the parties, I requested further briefs upon the question of whether or not the action was barred by the statute of limitations under the Portal-to-Portal Act.

Defendants are permitted to amend their answer by alleging the statute of limitations as an affirmative defense to the action.

■ Generally limitations do not run against the government unless the statute imposing them clearly indicate such intention. But, it is my opinion that the section of the Portal-to-Portal Act stating when actions must be commenced to en-

force a cause of action for liquidated damages under the Walsh-Healey Act is applicable to actions commenced by the United States to recover liquidated damages from a contractor who breached a contract by knowingly employing minors in the manufacture or production of articles contracted for. See, United States v. Craddock-Terry Shoe Corporation, supra, D.C., 84 F.Supp. 842. So, the next question that presents itself, therefore, is, When does the limitation prescribed by the Portal-to-Portal Act begin to run? In other words, when does the cause of action like the one here accrue? This question is answered in a very able and well-reasoned opinion by Judge Paul in the Craddock-Terry Shoe Corporation case, 84 F.Supp. 842, 846, wherein he said: "It seems the plain intendment of the statute that administrative proceedings, consisting of the hearing, the findings of fact, and the decision of the Secretary, shall be the process whereby the Secretary determines whether the United States has a claim and the amount of it; and only when this has been determined and the contractor has refused payment, is resort to be had to the courts. The administrative proceedings appear to be a prerequisite to an assertion of the claim for damages; and it would appear that not until the conclusion of these proceedings with the Secretary's decision does the Government have a right of action in the courts for collection of the damages. I am, therefore, compelled to the conclusion that in applying to actions of the instant sort the two-year limitation prescribed by the Portal-to-Portal Act, the time when the limitation begins to run is the date of the Secretary's decision asserting the claim for damages."

In accordance with the requirements of the Act, the administrative proceeding was set in motion on January 15, 1947, by the filing of the Secretary's complaint dated January 9, 1947. Hearing on the Secretary's complaint was held February 25, 1947, in Batesburg, South Carolina, and, February 26–27, 1947, in Newberry, South Carolina. The trial examiner's decision was released July 27, 1948, following which exceptions were taken by the defendants, who, on August 13, 1948, filed their petition for review by the Administrator. The Administrator's decision on the defendants' petition for review was filed July 28, 1949, and, there being no further appeal, it became final twenty days thereafter on August 19, 1949. Action in this Court was filed on May 16, 1950.

Section 6 of the Portal-to-Portal Act, 29 U.S.C.A. § 255, provides that "any action * * * to enforce any cause of action" must be commenced "within two years after the cause of action accrued".

Under the rule laid down in the case of United States v. Craddock-Terry Shoe Corporation, supra, D.C., 84 F.Supp. 842, the cause of action here was commenced within the time required, and it is, therefore, not barred by the statute of limitations.

To the extent herein stated, the administrative findings are supported by the preponderance of the evidence and should be sustained, and summary judgment entered for the plaintiff, and

It is so ordered.